Leonard DARVIN, on behalf of himself
and all other persons similarly
situated, Plaintiff,

v.

INTERNATIONAL HARVESTER COM-
PANY, Roger E. Anderson, Karl D.
Bays, Dr. Andrew F. Brimmer, James J.
Doyle, Mary Garst, Dr. Arthur G. Han-
sen, Warren J. Hayford, J. Patrick
Kaine, Joseph B. Lanterman, Archie R.
McCardell, Brooks McCormick, Louis
W. Menk, Graham J. Morgan, Keith R.
Potter, Dr. John T. Rettaliata, Edson
W. Spencer, Ben H. Warren, Morgan
Stanley & Co. Incorporated, Continen-
tal Illinois Corporation and Morgan
Guaranty Trust Company of New York
on behalf of itself and all others sim-
ilarly situated, Defendants.

No. 81 Civ. 2168 (JES).

United States District Court,
S.D. New York.

June 10, 1985.

Wolf, Haldenstein, Adler, Freeman &
Herz, New York City, for plaintiff; Daniel
W. Krasner, Fred Taylor Isquith, of coun-
sel.

Cravath, Swaine & Moore, New York
City, for defendants Roger E. Anderson,
Karl D. Bays, James J. Doyle, Mary Garst,
Dr. Arthur G. Hansen, Warren J. Hayford,
J. Patrick Kaine, Joseph B. Lanterman, Ar-
chie R. McCardell, Brooks McCormick, Gra-
ham J. Morgan, Keith R. Potter, Dr. John
T. Rettaliata, Edson W. Spencer and Ben
H. Warren and Intern. Havester Co.; Rory
O. Millson, Richard M. Breslow, of counsel.

Davis Polk & Wardwell, New York City,
for defendant Morgan Stanley & Co. Inc.;
Dennis Glazer, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

Plaintiff Leonard Darvin purchased 500
shares of common stock in defendant Inter-

national Harvester Co. ("Harvester") on the open market in December 1980. He sold 500 shares in February 1981 for a loss, a few days after Harvester disclosed losses of $96.4 million for the first quarter of fiscal 1980. Plaintiff sues for damages pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and common law, alleging that a Harvester prospectus issued on October 16, 1980 with respect to preferred stock, along with other statements by defendants, misrepresented the true financial condition of Harvester and caused a fraud on the market which artificially inflated the price of Harvester stock.[1]

Plaintiff has moved to have the action certified as a class action and to be named class representative pursuant to Fed.R. Civ.P. 23.[2] The proposed class would include all purchasers of Harvester equity securities who bought their stock between October 16, 1980, when the allegedly fraudulent prospectus was issued, and February 19, 1981, when Harvester disclosed its first quarter 1980 losses, excepting defendants herein and those who purchased preferred stock pursuant to the October 16, 1980 offering.[3]

In order to certify the action as a class action, the Court must find that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of plaintiff are typical; and (4) plaintiff will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). The Court must also find that common questions of law or fact predominate over individual issues, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R. Civ.P. 23(b)(3).

■ The Court finds that plaintiff would not be a suitable class representative and would not adequately protect the interests of the class because, *inter alia*, there are unique defenses which defendants can assert against him, especially with respect to his credibility, and because plaintiff has demonstrated a serious lack of familiarity with the suit.[4]

To illustrate these problems, the Court need only point to a few examples. One of the alleged misrepresentations in the October 16, 1980 prospectus is the statement that Harvester forgave a loan of $1,796,240 to defendant McCardell based on Harvester's performance in fiscal 1979. Plaintiff claims that, in fact, the loan forgiveness was motivated by McCardell's belief that Harvester's prospects were bleak and his concern that if Harvester went bankrupt he would have to repay the loan. Plaintiff alleges that the forgiveness was excessive and unreasonable in amount, and that the company received no valuable consideration in return. *See* Amended Complaint ("Complaint") ¶¶ 18, 23(h), 25(g), 26.

---

1. In addition to Harvester, defendants are Morgan Stanley & Co., lead underwriter of the issuance of preferred stock pursuant to the October 16, 1980 prospectus; Morgan Guaranty Trust Co. and Continental Illinois Corp., lending banks to Harvester; Archie R. McCardell, chief executive officer and chairman of Harvester's board of directors; Warren J. Hayford, president and chief operating officer of Harvester; Keith R. Potter, vice chairman of Harvester's board; Brooks McCormick, director and chairman of Harvester's executive committee; Roger E. Anderson, director of Harvester and chairman of the board of defendant Continental Illinois; and Karl D. Bays, Dr. Andrew F. Brimmer, James J. Doyle, Mary Garst, Dr. Arthur G. Hansen, J. Patrick Kaine, Joseph B. Lanterman, Louis W. Menk, Graham J. Morgan, Dr. John T.

Rettaliata, Edson W. Spencer, and Ben H. Warren, directors of Harvester.

2. Plaintiff's previous motion for class action certification was denied without prejudice by the Court due to plaintiff's failure to respond to proper questions at his deposition. Plaintiff has now been re-deposed, and has renewed the motion for class certification.

3. A class action brought by those who did purchase pursuant to that prospectus and its accompanying registration statement is also pending before this Court. *See Weinberger v. International Harvester Co.,* 81 Civ. 1859 (JES).

4. Therefore, the Court need not address the parties' other arguments with respect to the requirements of Rule 23.

However, at his initial deposition plaintiff testified that he started to think of selling his Harvester stock in January 1981 because the news regarding the company was "turning a bit negative," and that one of the first indications of this was when McCardell asked that his loan be forgiven. *See* Darvin Deposition at 27–28. Plaintiff testified that he was sure he was not aware of the loan forgiveness when he purchased his stock. *See id.* at 28. He subsequently stated that he wasn't sure when he learned of McCardell's loan, and that it might not have had anything to do with his decision to sell. *See id.* at 28–29. Later, plaintiff testified that he wanted to correct his previous statement, in that he did know of the loan to McCardell when he purchased his stock, but did not know that it had been forgiven, and that the news of forgiveness "had a very negative impact" on him. *See id.* at 61–62.

When confronted with the October 16, 1980 prospectus which disclosed both the loan and the fact that the loan had been forgiven, plaintiff changed his testimony again and stated that when he purchased he knew the company had taken steps to forgive the loan, but believed this was done because of McCardell's outstanding performance, and only later discovered that his performance had in fact been "very negative" and that the loan had been forgiven so that McCardell would not have to pay for stock he had previously purchased. *See id.* at 62–63. He testified that this was one of the factors which made him decide Harvester was "deteriorating." *See id.* at 65–66. *See also id.* at 145–48, 173–74.[5]

This type of inconsistent testimony could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination and unique defenses at trial, to the detriment of the class. These credibility problems are a basis for denying plaintiff's motion to be named class representative. *See, e.g., Kline v. Wolf,* 702 F.2d 400, 402–03 (2d Cir.1983), *aff'g in relevant part,* 88 F.R.D. 696, 699–700 (S.D.N.Y.1981); *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Cohen v. Laiti,* 98 F.R.D. 581, 582–83 (E.D.N.Y.1983); *Weisman v. Darneille,* 78 F.R.D. 669, 671 & n. 4 (S.D.N.Y.1978); *Goldberg v. Taylor Wine Co.,* 27 Fed.R.Serv.2d 1298, 1300 (E.D.N.Y.1979), *aff'd,* 636 F.2d 1201 (2d Cir.1980).

Moreover, plaintiff repeatedly stated that his memory regarding the complaint and his dealings in Harvester stock were poor. *See, e.g., id.* at 30, 55; *cf. id.* at 100–03, 112–13, 124. His deposition demonstrates that his personal knowledge of many of the facts pleaded in the complaint is extremely limited or nonexistent. *See, e.g., id.* at 247–61. Plaintiff was also unsure of who he purported to represent should the suit be certified as a class action. *See id.* at 56–57, 162. This uncertainty and inconsistency, which are characteristic of plaintiff's deposition testimony and which indicate plaintiff's unfamiliarity with the action, illustrate his inadequacy to act as class representative. *See, e.g., Weisman, supra,* 78 F.R.D. at 671; *Greenspan v. Brassler,* 78 F.R.D. 130, 133–34 (S.D.N.Y.1978).

Finally, plaintiff's failure to fully comply with reasonable discovery requests, as demonstrated by his refusal to answer relevant questions at both sessions of his deposition, indicate that he is not suitable to fulfill the fiduciary obligations of a class representative. *See, e.g., Kline, supra,* 702 F.2d at 403, *aff'g,* 88 F.R.D. at 700;

---

5. A further example of the means in which plaintiff's credibility can be attacked is that he originally testified that he had no recollection of whether or not he had ever seen or read the October 16, 1980 prospectus—the primary document which he alleges in his complaint was fraudulent. *See* Darvin Deposition at 30. He then stated that if he had read the prospectus, he would probably have done so before he purchased stock, although he couldn't be sure, *see id.* at 31, and then testified that he believed he had read the relevant portions before he purchased. *See id.* At his continued deposition two years later plaintiff stated without question or hesitation that he had reviewed the entire prospectus prior to his purchase. *See, e.g., id.* at 97, 109.

*Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y.1976).[6]

It follows that plaintiff's motion to certify the suit as a class action and to be named class representative must be denied.

It is SO ORDERED.

---

**6.** The Court rejects the suggestion that plaintiff's status as a sophisticated investor is, in and of itself, sufficient to warrant denial of his application to represent the class, provided plaintiff's interests are not antagonistic to those of the class. *See, e.g., Koenig v. Smith,* 88 F.R.D. 604, 607 (E.D.N.Y.1980); *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 470 (S.D.N.Y.1968); *Leist v. Tamco Enterprises, Inc.,* No. 80 Civ. 4439— CLB, slip op. at 5–7 (S.D.N.Y. March 16, 1982).